1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

UNITED STATES OF AMERICA,

CASE NO. 10CR3044 WQH

11

Plaintiff,

ORDER

vs.

12

TELLE KRESCHMER (33),

13

Defendant.

14

15    Hayes, Judge:

16        The matters before the Court are: 1) Defendant's objections to Presentence

17    Report (ECF No. 2071) and 2) United States' motion for an order finding Defendant

18    materially breached the plea agreement (ECF No. 2118).

19                           **BACKGROUND FACTS**

20        Defendant Telle Kreschmer entered pleas of guilty to Count 1 and Count 2 of a

21    Second Superseding Indictment charging in Count 1 conspiracy to conduct enterprise

22    affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) and

23    in Count 2 conspiracy to distribute more than 50 grams of methamphetamine in

24    violation of 21 U.S.C. § 841(a)(1) and 846.

25        Defendant admitted in the Plea Agreement to participation in the affairs of the

26    racketeering conspiracy and admitted that she was aware that the racketeering activities

27    included commission of murder, and conspiracy to murder, kidnaping, robbery, and

28    importation of controlled substances and other crimes. In addition, Defendant admitted

to the following fact:

> On or about December 21, 2009, defendant Telle Kreschmer observed Mario Escamilla, Raul Moreno and other individuals store approximately 176 pounds of marijuana, 1 pound of methamphetamine, 5 to 6 grams of cocaine, an AK-47 assault rifle, a shotgun and a .38 caliber handgun at an apartment occupied by defendant Telle Kreschmer and codefendant Mikael Daniel Blaser.

(ECF No. 1324 at 8).  Defendant further admitted that she smuggled methamphetamine on February 3, 2010; February 10, 2010; and February 11, 2010.

The Probation Office prepared a Presentence Report which stated in relevant part: "In Overt Acts 21 and 107 [of the Second Superseding Indictment] KRESCHMER was in possession of an AK-47 assault rifle, shotgun, and/or a .38 caliber-pistol while in possession of drugs for distribution. Therefore, a two-level adjustment applies pursuant to USSG § 2D1.1(b)(1)." (ECF 1726 at 20).  The Presentence Report further stated: "As KRESCHMER possessed a firearm during the above outlined overt acts, she is ineligible for 'safety valve' relief pursuant to USSG § 5C1.2(a)(2).  Accordingly, she is also ineligible for the two-level reduction under USSG § 2D1.1(b)(16)."  *Id.*

Defendant filed an objection to the Presentence Report. (ECF No. 2071). Defendant did not object to the increase of two levels pursuant to UNITED STATES SENTENCING GUIDELINES ("U.S.S.G.") § 2D1.1(b)(1) on the grounds that she "possessed...a dangerous weapon (including a firearm)."  U.S.S.G. § 2D1.1(b)(1). Defendant did object to the conclusion in the Presentence Report that she is ineligible for "safety valve" relief pursuant to U.S.S.G. § 5C1.2(a)(2) on the grounds that she "possessed a firearm during the above outlined overt acts."  (ECF No. 1726 at 20).

Defendant stated:

> While Ms. Kreschmer agrees that her observation of guns being stored by codefendants somewhere in the apartment she shared with Codefendant Blaser meets the requirement under §2D1.1(b)(1)(a) that she "possessed" a firearm, she disagrees that as a result of this observation she also "possessed a firearm" in "connection with the offense" under § 5C1.2(a)(2).

(ECF No. 2071 at 5).  Defendant contends that she agreed to the gun enhancement because her codefendants possessed guns in a manner which would trigger relevant

conduct under U.S.S.G. §2D1.1(b)(1).  Defendant further asserts that the relevant conduct of codefendants cannot be imputed to a defendant under U.S.S.G. §1B1.3(a)(1)(B) to defeat safety valve, that is, possession of a gun by a codefendant cannot be used, in and of itself, to deny safety valve.  Defendant asserts that she has demonstrated by a preponderance of the evidence that she was not personally connected to the kinds of illicit activities which would support a finding that she exercised dominion and control over the weapons in this case.  Defendant asserts that she crossed the border with drugs concealed in her body, and that she was a low level courier who took orders from her abusive boyfriend and that she is eligible for relief under safety valve.

The Government contends that Defendant is not eligible for safety valve relief because the conduct that supports the enhancement under U.S.S.G. § 2D1.1(b)(1) is the same conduct that defeats the Defendant's request for safety valve relief.  The Government asserts that the Defendant has not satisfied her burden to show that she did not possess firearms in connection with the offense.  The Government contends that it is undisputed that "firearms were possessed in connection with the drug trafficking conspiracy for the purposes of § 2D1.1(b)(1)'s 2-level enhancement." (ECF No. 2088 at 7).  The Government contends that Defendant constructively possessed the firearms because she resided where the guns were stored, knew of their presence, and knew of their purpose in drug trafficking.  The Government asserts that Defendant's "residency, knowledge of the firearms, and understanding about the purpose of the weapons, coupled with the absence of any innocent explanation, shows that she possessed the firearms in connection with her drug trafficking activity." (ECF No. 2088 at 11).

On March 4, 2014, the Court held an evidentiary hearing.  Defendant Kreschmer testified that she lived in an apartment with codefendant Blaser and her young children for approximately a year, that she observed Blaser with a handgun inside the apartment, and that she knew that Blaser stored drugs and guns in the apartment.  Defendant Kreschmer testified that  on December 21, 2009 she saw Blaser and others bring a suit

bag and present bags into the apartment and believed that the bags contained contraband, that she learned that the bags were stored in the bedroom closet, and that Blaser moved her items from the closet and did not allow her access to the closet. Defendant Kreschmer testified that she and her son were scared of Blaser and that Blaser was abusive.    Defendant Kreschmer testified that she smuggled methamphetamine into the United States at Blaser's request, that she was personally using drugs at the time, and that she received money from Blaser to buy necessities in return.

At the evidentiary hearing, Defendant Kreschmer testified that she did not specifically recall noting that those individuals brought in exactly 176 pounds of marijuana, 5 to 6 grams of cocaine, and specific weapons on December 21, 2009. Defendant Kreschmer testified: "I just saw them come in with bags." (ECF No. 2118-1 at 15).  Defendant Kreschmer testified that she did not see any firearms in the apartment other than "the time ... [she] saw ... Blaser walk by the bedroom with the handgun or the time ... [she] saw Royal [her son] with the AK-47."  (ECF No. 2118-1 at 46).

The Government asserts that Defendant materially breached the Plea Agreement by testifying to facts inconsistent with the factual basis of the Plea Agreement. Defendant contends that her testimony that she was not aware of the specific type and quantities of drugs and weapons but that she knew that drugs and weapons were brought into the apartment and stored in the closet by Blaser and other co-conspirators was consistent with her admission in the Plea Agreement.

## RULING OF THE COURT
### U.S.S.G. § 2D1.1(b)(1) gun enhancement and U.S.S.G. §5C1.2 safety valve

The Government has the burden of proof under § 2D1.1(b)(1) by a preponderance of the evidence. *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000).  Defendant does not dispute the conclusion by the Probation Office that she possessed firearms in connection with drug trafficking conspiracy for the purposes of the two level enhancement under § 2D1.1(b)(1).

Defendant admitted in the Plea Agreement to participation in the affairs of the racketeering conspiracy and admitted that she was aware that the racketeering activities including the commission of murder, and conspiracy to murder, kidnaping, robbery, and importation of controlled substances. Defendant admitted that she observed codefendants and co-conspirators store the firearms and the drugs at her residence. Defendant's admissions satisfy the requirement that Defendant knew that the weapons were possessed by a codefendant or co-conspirator in connection with the offenses. Under U.S.S.G. § 2D1.1(b)(1), the relevant conduct of a codefendant or co-conspirator can be imputed to the defendant under §1B1.3(a)(1)(B). In conspiracy cases, the enhancement under U.S.S.G. § 2D1.1(b)(1), applies if the conspirator's possession of a firearm "was reasonably foreseeable and furthered jointly undertaken criminal activity." *United States v. Ortiz*, 362 F.3d 1274, 1278 (9th Cir. 2004).

In this case, Defendant is entitled to a two level decrease in the base offense level if she "meets the criteria set forth in subdivisions (1) to (5) of subsection (a) of § 5C1.2." U.S.S.G. §2D1.1(b)(16). U.S.S.G. §5C1.2(a)(2) makes a defendant ineligible for relief from the statutory minimum sentence if she "possess[ed] a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(a)(2). Application Note 4 of §5C1.2 states: "Consistent with §1B1.3, (Relevant Conduct), the the term 'defendant' as used in subsection (a)(2) limits the accountability of the defendant to his own conduct and conduct that he aided, or abetted, counseled, commanded, induced, procured, or willfully caused." This is the language of Relevant Conduct §1B1.3(a)(1)(A) and does not include the conspiracy language in Relevant Conduct §1B1.3(a)(1)(B).[1]

Generally, the conduct which warrants an increase in sentence under §

---

[1] "Unless otherwise specified, [] the base offense level... shall be determined on the basis of the following: (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity..., all reasonably forseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. §1B1.3(a).

2D1.1(b)(1) defeats application of the safety valve.  *See United States v. Ferryman*, 444 F.3d 1183, 1187 (9th Cir 2006) ("We join with other circuits that have similarly affirmed the denial of safety valve relief based upon the circumstances in which the firearms were found, coupled with the implausibility of defendants' explanations."). However, in *United States v. Nelson*, 222 F.3d 545 (9th Cir. 2000), the Court of Appeals stated: "[W]e hold that, even where a defendant has already received a §2D1.1 enhancement, the defendant need only show his eligibility for [safety valve] relief by a preponderance of the evidence."  222 F.3d at 551.

In this case, the factual basis in the Plea Agreement supports the gun enhancement based upon the conduct of codefendants and co-conspirators.  There are no factual admissions in the Plea Agreement by Defendant Kreschmer to support direct possession of a weapon.   "[T]he courts of appeals repeatedly have held that the possession of a weapon by the defendant's co-conspirators in a manner that would trigger the increase in the defendant's sentence provided for by §2D1.1(b)(1), does not necessarily mean that the defendant possessed the weapon in a manner that would preclude entitlement to the safety valve."  *United States v. Herrera*, 446 F.3d 283, 286 (2nd Cir. 2006)(collecting cases); *see also Nelson*, 222 F.3d at 551.

The burden of proof for safety valve relief under U.S.S.G. § 5C1.2 remains on the Defendant.  Defendant must show by a preponderance of the evidence that she did not "possess a firearm or other dangerous weapon ... in connection with the offense" in order to show her eligibility for safety valve relief.  U.S.S.G. § 5C1.2(a)(2).  *See e.g. United States v. Carrasco,* 257 F.3d 1045, 1049 (9th Cir. 2001) ("A showing of actual, constructive or joint possession is sufficient to establish the possession element of a section 922(g) offense.   "In the more difficult situation where the premises are shared by more than one person, the Ninth Circuit has found that if a party has knowledge of the weapon and both the power and the intention to exercise dominion and control over it, then he has constructive possession."  *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990).  "Mere proximity to contraband, presence on property where it is found and

1   association with a person or persons having control of it are all insufficient to establish

2   constructive possession." *Id.* at 279 (citations omitted).

3       The Court concludes that Defendant's testimony is sufficient to show by a

4   preponderance of the evidence that she did not possess the "power and the intention to

5   exercise dominion and control" over the firearms in this case. *Terry*, 911 F.2d at 278.

6   Even though her co-conspirators possessed weapons in connection with the offenses

7   and Defendant knew that her co-conspirators possessed weapons in connections with

8   the offenses, the evidence in this case shows that Defendant's "own conduct and

9   conduct that [she] aided, counseled, commanded, induced, or willfully procured" does

10  not preclude her from safety valve relief under §5C1.2 on the grounds that she

11  possessed a weapon in connection to the offense.  (Application Note 4 U.S.S.G. §

12  5C1.2(a)(2)).

13      The Court concludes that Defendant meets the criteria set forth in subdivisions

14  (1)-(5) of subsection (a) of § 5C1.2 and is entitled to the two-level reduction under two

15  level decrease in the base offense level under U.S.S.G. §2D1.1(b)(16).

16  **Breach of the Plea Agreement**

17      In *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir. 1985), the Court of

18  Appeals stated:

19      Although the plea bargain is a matter of criminal jurisprudence, a plea
        bargain is contractual in nature and is measured by contract-law standards.
20      *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir.1980). Thus, any
        dispute over the terms of the agreement "will be determined by objective
21      standards." *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984).
        To determine whether the plea agreement was violated, we first determine
22      "what the parties to this plea bargain reasonably understood to be the
        terms of the agreement." *United States v. Arnett*, 628 F.2d 1162, 1164 (9th
23      Cir.1979). What the parties agreed to "is a question of fact to be resolved
        by the district court." *Krasn*, 614 F.2d at 1233. *See also Arnett*, 628 F.2d
24      at 1164. Accordingly, the district court's findings as to the terms of a plea
        agreement are reviewed only for clear error. *Krasn*, 614 F.2d at 1233.
25
    778 F.2d  at 1441.
26
27      The Government points to the following two provisions of the Plea Agreement

28  to support its position that the Defendant materially breached the Plea Agreement by

    making materially inconsistent statements at the March 4, 2014 hearing:

XII ... Defendant acknowledges, understands, and agrees further that the following non-exhaustive list of conduct by defendant unquestionably constitutes a material breach of this plea agreement ... Failing to fully accept responsibility as established in Section X, paragraph B, above...

X ... B. ... the Government will not be obligated to recommend any adjustment for Acceptance of Responsibility if defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following: 1. ... falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement.

(ECF No. 1324 at 17,14).

In this case, the factual admissions in the Plea Agreement addressed Defendant's role in the conspiracy; her observations at the apartment on December 21, 2009; and her direct participation in drug smuggling on February 3, 2010, February 10, 2010, and February 11, 2010. Defendant's eligibility for "safety valve" treatment is identified as a disagreement between the parties in the Plea Agreement. *Id.* at 14. Defendant testified at the March 4, 2014 evidentiary hearing that she observed codefendant Blaser and other co-conspirators bring bags into the apartment on December 21, 2009 and that she believed the bags contained contraband. Defendant testified that she did not know the specific amounts and type of drugs and the specific weapons brought into the apartment and stored in the closet by Blaser on that date. Defendant testified that she later learned the specifics of the drugs and weapons through other events, including the search of the apartment closet by law enforcement on March 18, 2010. The Court concludes that the Defendant's admission in the Plea Agreement that she observed specific quantities and specific weapons is not materially inconsistent with her testimony that she was not aware of the specific type and quantities of drugs and weapons on December 21, 2009. The Court finds that there was no breach of the Plea Agreement by the Defendant or by the Government. Both parties presented evidence and legal argument for resolution of the safety valve issue by the Court.

        IT IS HEREBY ORDERED that 1) Defendant's Objections to Presentence Report (ECF No. 2071) are granted and 2) United States' motion for an order finding Defendant materially breached the Plea Agreement (ECF No. 2118) is denied.  Any further sentencing materials shall be filed by May 7, 2014.  Sentencing will be on Friday, May 16, 2014 at 2 p.m.

DATED:  April 30, 2014

**WILLIAM Q. HAYES**
United States District Judge